In the Matter of the MARRIAGE OF William C. WADE and Frances Carol Wade.

No. 06–95–00098–CV.

Court of Appeals of Texas, Texarkana.

Argued April 10, 1996.

Decided April 30, 1996.

Rehearing Overruled June 4, 1996.

Brady Paddock, Patton, Tidwell, Sandefur, Paddock, Texarkana, for Appellant.

Winford L. Dunn, Jr., Dunn, Nutter, Morgan, Shaw, Texarkana, AR, Jeff M. Addison, Dunn, Nutter, Morgan, Shaw, Texarkana, AR, for Appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

William Wade appeals the trial court's award to Frances Wade of a portion of the termination payments provided by his insurance agent's contract. Although we affirm the trial court's judgment as to the community nature of the termination benefits, we hold that the court erred in calculating the amount of the award and therefore remand for a new division of the marital estate.

William Wade began work with State Farm Insurance Company in 1963 as an agent in training. After his training period was completed, he signed a contract as an agent with the company in 1966 or 1967. There is no evidence in the record as to whether this first contract provided for the payment of termination benefits. On March 1, 1977, he entered into a second agency agreement, which was still in effect at the time of trial. This second agreement provides for annual payments to be made to the agent for five years following termination of the agreement by either party or by the agent's death. The amount of the payments is based primarily on the agent's total commissions for the year preceding termination.

The Wades were married on May 4, 1973. The trial court granted the divorce on October 17, 1994. At the time of the divorce, William Wade was still a State Farm agent. The court found that the anticipated termination payments were deferred compensation, accruing at least in part during the marriage. The court therefore concluded that the value of the termination payments was community property and awarded Frances Wade $65,000.00 as her share of this asset, to be paid by William Wade at the time of judgment.

William Wade contends that the court erred in classifying the value of the termination payments as community property because the evidence was legally and factually insufficient to support the court's finding that the payments are a form of deferred compensation.[1]

1. In pertinent part, the termination payments clause reads as follows:

    A. In the event this Agreement is terminated:

    (1) two years or more after its effective date, or

    (2) at any time after its effective date, if at the date of termination you have two or

■ Whether termination payments under an insurance agent's agreement are community or separate property is a question of first impression in Texas. Texas law is clear, however, that unmatured retirement benefits earned during marriage are a community asset subject to division upon divorce. *Cearley v. Cearley*, 544 S.W.2d 661, 666 (Tex. 1976). Such benefits are not "earned" on the day on which they mature, but are instead a form of deferred compensation earned during each month of employment. *Id.* at 665. At the time of divorce, they constitute a contingent property interest of the marital community. *Id.* at 666.

■ William Wade maintains that the termination payments under his agency agreement with State Farm are unlike retirement benefits in that they are not deferred compensation. Because the amount of benefits is based on the agent's commissions for the twelve-month period immediately preceding termination, he argues that the payments do not constitute compensation for work performed prior to this period.

This argument ignores William Wade's own testimony that by far the largest component of a State Farm agent's commissions is typically attributable to renewals of policies. The agent continues to receive commissions on a policy for as long as the policy is renewed. Because the termination payments under the agency agreement are based on these cumulative commissions, they are earned by work performed throughout an agent's career, in much the same manner as retirement benefits are earned.

The Supreme Court of California has held that unmatured termination payments under a State Farm agreement such as this are divisible community property.[2] *In re Marriage of Skaden*, 19 Cal.3d 679, 139 Cal.Rptr. 615, 619, 566 P.2d 249, 253 (1977). In reaching this conclusion, the California court relied on the reasoning of its earlier, seminal decision, *In re Marriage of Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976), which

---

more continuous years of combined service as an agent under either a prior *State Farm Agent's Agreement* (Form AA) or a *Local Agent's Appointment* (Form LA) and this Agreement;

the respective Companies will, subject to the conditions set forth in subparagraph A–4 and paragraph B of this section, pay you or your legal representative, less any deductions for commission charge-backs, the following termination payments:

1. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY will pay:
(a) For the first twelve (12) months following the date of termination the lesser of the amounts computed in (1) and (2):
(1) twenty percent (20%) of the service compensation on "personally produced" policies, you earned under the Schedule of Payments for Other than Health Insurance Policies in the twelve (12) preceding months, or twenty percent (20%) of the service compensation on "personally produced" policies credited to your account, as of the date of termination, which remain in force in the same state, during the first twelve (12) months following the date of termination, whichever is greater, or
(2) thirty percent (30%) of the service compensation on "personally produced" policies credited to your account as of the date of termination, which remain in force in the same state during the first twelve (12) months following the date of termination. In the event thirty percent (30%) of the service compensation as specified in (2) is less

than the greater amount of the service compensation as computed in (1) and if the number of "personally produced" policies in force at the end of the first twelve (12) months following the date of termination is equal to or greater than seventy-five percent (75%) of the number of the "personally produced" policies in force at date of termination, you will be paid the amount provided for in (1).

. . . .

(c) The payments provided for in (a) and (b) shall be made in estimated monthly installments equal to twenty percent (20%) of the service compensation earned in the twelfth (12th) preceding month subject to appropriate adjustments following a determination of the net premium collections as specified in (a)(2) and (b)(2) and the number of policies in force, where applicable.
(d) For each of the succeeding forty-eight (48) months you will be paid an amount equal to one-twelfth ($\frac{1}{12}$th) of the total amount payable in the first twelve (12) months after termination.

2. William Wade cites *Lawyer v. Lawyer*, 288 Ark. 128, 702 S.W.2d 790 (1986), for the proposition that termination payments under this type of State Farm contract are not divisible marital property. Because Arkansas, unlike Texas, is not governed by the doctrine of community property, the cited authority from California, a community property state, is more persuasive in this matter.

held that unmatured retirement benefits are community property. The Texas Supreme Court explicitly approved, and quoted extensively from, *Brown* in adopting its holding as the law in Texas. *Cearley*, 544 S.W.2d at 663–64. In light of these precedents, we hold that the trial court did not err in finding that the termination payments granted by the instant insurance contract are a form of deferred compensation.

William Wade also contends that the evidence was legally and factually insufficient to support the trial court's conclusion that the termination payments are community property because the conditions precedent to receipt of the payments were not, or alternatively, will not be, satisfied during the marriage. William Wade argues that according to section A(2) of the contract, his right to receive termination payments arises from his having completed at least two years of service as an agent under a prior contract. Since he worked under a prior contract for at least two years before his marriage, he argues that his claim to the payments arose before the marriage. Alternatively, he argues that because the amount of the payments is based on commissions for the twelve months preceding termination, and because he has continued to work as an agent following the divorce, the right to the benefits will be earned only during a future twelve-month period that culminates in his termination, rather than during the marriage.

These arguments are without merit. The right to the termination payments came into existence upon William Wade's execution of the agency agreement on March 1, 1977, which was during the parties' marriage.[3] The majority of the benefits reflected in the termination payments were earned by work he performed for State Farm throughout the entire marriage. Furthermore, the fact that the amount of the actual payments will be based on commissions received during a

twelve-month period sometime after the dissolution of the marriage does not mean that the payments are separate property because, as noted above, the commissions are cumulative over an agent's entire career. The evidence was legally and factually sufficient to support the trial court's characterization of the termination payments as community property subject to division upon divorce.

William Wade contends that even if the trial court was correct in characterizing the termination payments as community property, the evidence was legally and factually insufficient to support the court's valuation of this marital asset and its calculation of Frances Wade's share of it.

William Wade testified that his commissions for the year before trial totalled $197,000.00. He also testified that he was fifty-five years old at the time of trial and that he had no intention of terminating his agency relationship with State Farm at any time in the foreseeable future.

Richard Otwell testified that he was an area manager for State Farm Insurance Company and that he was Wade's supervisor. He testified that the termination payments under the agency contract are payable upon voluntary termination by the agent or the company or upon the agent's death, if at the time of termination the agent has two years' prior service as a State Farm agent. He also testified that the total amount of the termination payments is approximately equal to the total commissions of the agent for the year preceding termination and that twenty percent of this total is paid each year to the agent over the five-year period following termination. He testified that there was a possibility that the amount of the last four yearly payments might decrease if there was a substantial decrease during the year after termination in the number of renewals of the agent's policies.

---

**3.** William Wade does not explicitly argue that the termination payments are his separate property by virtue of his execution of the first agency agreement in 1966 or 1967, which preceded the marriage. The record and briefs are silent as to whether this first contract provided for termination payments. Even if the first contract did contain such a provision, it is not clear that the payments would thereby be rendered separate property, since the work which actually produced the value of the ultimate payments was performed largely during the marriage. In any event, because the evidence does not present such a question, we do not address it.

The trial court found that a value of the termination payments could be placed as of the date of dissolution and set this value at $197,000.00. Then, taking into account Otwell's testimony that the amount of the payments might decrease, the court discounted this value to $130,000.00. The court then awarded Frances Wade half of this amount, or $65,000.00.

■ William Wade argues that the trial court erred in attempting to place a value on the termination payments, because he has no intention of terminating his employment in the foreseeable future, and therefore the amount of the future payments cannot be determined. If William Wade had terminated his employment with State Farm on the date of the divorce, however, he would have been fully eligible to begin immediately receiving the benefits. When a spouse who is a party to a divorce proceeding continues to work following the divorce, marital property interests such as retirement benefits arising from that spouse's employment are to be valued as of the date of divorce only, so that no portion of any post-divorce increases in benefits are awarded to the nonemployee spouse. *Berry v. Berry*, 647 S.W.2d 945, 947 (Tex.1983). Specifically, the trial court is to determine the amount of benefits the earning spouse would receive on the date of divorce if he or she were eligible for the benefits on that date. *Id.* at 946. The record in this case reflects that the trial court recognized this principle and attempted to value the termination payments as of the date of divorce.

■ The court found that William Wade's commissions for the year preceding the divorce were $197,000.00. This finding is supported by the evidence, which included copies of his tax returns. The court then proceeded to calculate what it termed the "discounted present value" of the benefits, which it found to be $130,000.00. The court based this discounting on Otwell's testimony that the amount of the annual termination payments might be lower after the first year if premiums from policies Wade had written decreased during the year following termination, as specified in section A1(a)(2) of the contract. Otwell did not testify, however, as

to the likelihood that such a decrease would occur or, if it did, how much the decrease might be. Instead, he said that the figure of twenty percent of the final year's commissions, paid each year for five years, was a general rule of thumb. William Wade also testified that he understood that he would receive twenty percent of the final year's commissions each year for five years following termination. In light of this testimony, the evidence was insufficient to justify the court's reduction of the value of the benefits as of the date of divorce from $197,000.00 to $130,000.00 based on the possibility that commissions would drop during the year after termination. What evidence exists on this issue seems to indicate that such a decrease was possible, but unlikely.

■ It also appears that the trial court erred in calculating Frances Wade's share of the termination payments because it failed to take into account William Wade's years of employment as an agent prior to the marriage. In a divorce proceeding, if the period of the marriage does not completely coincide with the entire period during which the earning spouse accrued benefits prior to divorce, the benefits must be awarded to the nonearning spouse only in proportion to the years of marriage during which the benefits accrued. *Taggart v. Taggart*, 552 S.W.2d 422, 424 (Tex.1977).

The Wades were married in 1973. He began working as an agent-in-training in 1963. He entered into his first agency contract in 1966 or 1967. It is unclear from the record whether he received commissions during the years of training prior to signing the first contract and, if so, whether renewal commissions on the policies written during those years carried over into his service under the first contract. If such is the case, the trial court must include these training years in determining the total number of years of accrual of the termination benefits prior to divorce. The formula to be employed by the court in calculating Ms. Wade's award will then be as follows: The number of years of commissioned service during which the parties were married is divided by the number of total years of commissioned service to the date of divorce to arrive at the

percentage of the benefits subject to division. This percentage is then multiplied by half of the decreed value of the benefits as of the date of divorce, to produce Frances Wade's award, expressed as a fixed dollar amount. This formula to be employed by the trial court is set out in detail in the following cases: *Humble v. Humble*, 805 S.W.2d 558, 561 (Tex.App.—Beaumont 1991, writ denied); *May v. May*, 716 S.W.2d 705, 709 (Tex. App.—Corpus Christi 1986, no writ).

William Wade also challenges the provision in the divorce decree directing him to pay Frances Wade her share of the termination payments immediately. If uncertainties affecting the vesting or maturation of benefits preclude a court from making an accurate division of the benefits at the time of divorce, the court may order that the benefits be paid to the non-employee spouse if, as, and when received by the employee spouse. *Cearley*, 544 S.W.2d at 664. In this case, once the trial court on remand makes the necessary findings discussed above regarding the total number of years of benefit accrual to the date of divorce, there will be no uncertainty. In *Cearley* and the cases relied on therein, receipt of the pension benefits was subject to various yet-unmet conditions, and so it was possible that the employee might never qualify for the benefits. *Id.* In this case, however, if William Wade had terminated his employment on the date of the divorce, he would have begun receiving the termination benefits immediately, based on his final year's commissions. Once the trial court makes its findings on remand, it will have all of the information necessary to calculate the precise dollar amount of Frances Wade's award according to the formula referenced above, and the court will therefore be required to specify the amount of her award in its decree. Nevertheless, we believe it would be inequitable to require William Wade to pay this sum to Frances Wade now, since the award is based on benefits which will become available only upon William Wade's termination of employment with State Farm. We therefore conclude that, although under no circumstances will William Wade be relieved from his obligation to pay Frances Wade the fixed-dollar amount specified in the divorce decree, he need not satisfy this obligation to Frances Wade until his employment with State Farm is actually terminated.

The judgment is reversed and the case remanded for a new division of the marital estate.