Nancy Gail EPPERSON *v.*
Charles Lawson EPPERSON

CA 05-548

226 S.W.3d 35

Court of Appeals of Arkansas
Opinion delivered February 1, 2006

*The Blagg Law Firm, P.A.* by: *Ralph J. Blagg,* for appellant.

*Walmsley Law Firm,* by: *Bill H. Walmsley* and *Murphy, Thompson, Arnold, Skinner & Castleberry,* by: *Casey Castleberry,* for appellee.

TERRY CRABTREE, Judge. The nineteen-year marriage of appellant Nancy Epperson and appellee Charles "Chuck" Epperson was dissolved by a decree of divorce dated February 1, 2003. Through mediation, the parties reconciled most of their differences as to custody, visitation, and the division of marital property. Some issues were not resolved, however, including the question of whether appellee's termination benefits under his contracts of employment were marital property. Appellant appeals the trial court's decision that those benefits were not marital property. We affirm.

Prior to and throughout the marriage, appellee worked as an agent for State Farm Insurance Company. As an agent, most of his compensation is derived from commissions earned on renewal premiums. In 1997, appellee entered into a new agency agreement (AA97) with State Farm, as well as a contract identified as "State Farm Agent's Transition Amendment" (Transition Agreement). These contracts provided termination benefits to be paid whether

the contract was terminated by either appellee, State Farm, or the agent's death. With regard to termination benefits, the parties agree that the purpose of the transition agreement was to equalize any difference between benefits that might have been owed under the pre-1997 agreement, and those potentially to be received under the 1997 contracts.

Under AA97, for all business written under the "Life Schedule of Payments," the agent would receive upon termination, if he had five or less years of service, the compensation due had the agreement not been terminated. If the agent had five or more years of service, then he would receive the compensation due through policy years six through fifteen. For all other policies attributable to the agent's account, if the agent had twenty-five years of service, State Farm would pay a percentage of the premiums collected while the policy was still in effect. Under the transition agreement, if the agent had two or more years of continuous service, State Farm was to pay a supplemental amount, based on a formula, for the first sixty months following termination. In addition, an agent was eligible for "supplemental extended termination benefits," beginning on the sixty-first month following termination, if an agent was sixty years old at the date of termination and had twenty years of service as a State Farm Agent and ten years of continuous service immediately preceding termination.

In his testimony, appellee said that he had been an agent with State Farm since 1980, that he had no intention of terminating the contract, that he planned to remain an agent indefinitely, and that he had no reason to believe that State Farm intended to sever the relationship. Evidence was introduced showing that, if the contracts were terminated as of May 31, 2004, the termination benefit had a value of $123,196. This amount was based upon a "Target Termination Amount" of $4,421 per month, and "Annuitized Model Termination Amount" of $2,425 a month, and "Supplemental Termination Payments" of $1,996 per month.

In finding that the termination benefits were not marital property, the trial court relied on the supreme court's decision in *Lawyer v. Lawyer,* 288 Ark. 128, 702 S.W.2d 790 (1986). There under consideration was the husband's termination benefits under his contract of employment with State Farm. That contract provided that, if the agreement was terminated by either party or death, the agent would be entitled to sixty monthly installments of termination pay, based on a specified percentage of his earnings

during his final year of employment, if the agent had been employed for two years or more. The contract also contained what the supreme court referred to as a "true retirement plan," called "Extended Termination Payments," that took effect if the contract was terminated after the agent reached age sixty-five and had at least twenty years of service. *Id.* at 130, 702 S.W.2d at 792. State Farm had calculated the benefits owed to the husband if the agreement were terminated as of the date of trial with the result that he would have received $1,288 a month for five years.

The trial court in *Lawyer* found that the benefits were marital property and ordered payment to the wife of half the amount received, if there were ever a termination, and if the wife were still living. The supreme court reversed, declining to extend its holding in *Day v. Day*, 281 Ark. 261, 663 S.W.2d 719 (1984). The court agreed with the husband that the eventual receipt of the benefits was too speculative for them to be considered marital property, and it reasoned that, because an agent's compensation, and in turn termination benefits, were based on commissions generated from renewal premiums, benefits that might be potentially received in the future would bear no relation to present earnings.

█ Though appellant argues that *Lawyer v. Lawyer, supra,* is distinguishable, we perceive no meaningful difference between the contract benefits in that case and the one before us. In both cases, compensation was due in the event of termination, whether brought about by the parties to the contract or death. Like *Lawyer,* the agreements here contain provisions that are the equivalent of retirement benefits. The only difference is that the benefits in the present case are potentially payable for a longer period of time than those in *Lawyer.* That the benefits in this case are more generous than those in *Lawyer* is a distinction without a difference in our view, and we hold that the trial court did not err in finding that the termination benefits were not marital property.

Appellant points out that other jurisdictions have held that similar termination benefits are marital property. However, in *Lawyer* the supreme court recognized that there was contrary authority, yet it specifically declined to follow it. Even if we were inclined to reexamine the issue, we are not empowered to overrule decisions of the supreme court. *Vinson v. Ritter*, 86 Ark. App. 207, 167 S.W.3d 162 (2004). If this issue is to be reconsidered, it must be done by that court.

As a final point, appellant asks us to remand for the court to determine present value of the termination benefits. That will not be necessary in light of our holding that the benefits are not marital property.

Affirmed.

GLADWIN and ROBBINS, JJ., agree.