IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 5, 2021

## NICOLE MARIE NEUMAN v. PAUL PHILLIPS

**Appeal from the Chancery Court for Williamson County**
No. 20CV-49481     Deanna B. Johnson, Judge

_____

### No. M2021-01162-COA-T10B-CV
_____

A mother seeks accelerated review of the denial of her motion for recusal. In her motion, the mother argued that recusal was warranted because the trial judge's husband, an elected official, expressed a public opinion on the subject matter of the case. In this appeal, she again argues that the opinion of the judge's husband justified recusal. But she also argues that the order denying her motion for recusal reflected a bias on the judge's part. We agree that the opinion of the judge's husband on a political matter did not warrant recusal. And, while the order denying the recusal request did make findings about the motive behind the request that were unsupported by the record, the erroneous findings alone are insufficient to raise a reasonable question as to the judge's impartiality. So we affirm.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which KENNY W. ARMSTRONG and KRISTI M. DAVIS, JJ., joined.

Francis King, Nashville, Tennessee, for the appellant, Nicole Marie Neuman.

Amanda Raye Thornton and Corey T. Coleman, Nashville, Tennessee, for the appellee, Paul Phillips.

## OPINION

### I.

In September 2020, Nicole Marie Neuman petitioned to modify a parenting agreement with her former husband, Paul Phillips. Ms. Neuman claimed that a material

change of circumstances had occurred since the parties reached their agreement. Among other things, she alleged that Mr. Phillips had "established a pattern of being difficult toward[] [her]" and that he "unnecessar[ily] contradict[ed] [her] on reasonable education decisions." She also claimed that Mr. Phillips had "demonstrated that he [wa]s incapable of making joint education decisions."

Nearly a year later, Mr. Phillips asked the court to order the parties to mediation or to set a final hearing. He also moved to hold Ms. Neuman in civil contempt. In his motion for contempt, Mr. Phillips claimed that he had attempted to consult with Ms. Neuman regarding whether their child should attend in-person or online classes. But, without Mr. Phillips's consent, Ms. Neuman enrolled the child in online classes. Mr. Phillips contended that her action violated their divorce decree because he was granted "ultimate decision-making authority" on educational issues.

Ms. Neuman responded by opposing everything but mediation. She also argued that the case could not be ready for a final hearing because she was seeking leave to amend her original petition. The proposed amended petition alleged additional material changes in circumstances, including the parties' disagreement over in-person versus online schooling. According to Ms. Neuman, Mr. Phillips's "continued insistence that the [c]hild attend in-person school is contrary to the best interest of the [c]hild[] and potentially dangerous to his health and safety." And "[a]nyone not living under a rock has to know that the delta variant of COVID-19 is raging like wildfire in Middle Tennessee, with thousands of school children contracting the virus." For the first time, she asked that she "be vested with sole and exclusive authority to make educational decisions for [the child], including, without limitation, where he will attend school and whether he will do so in-person or online."

Shortly thereafter, Ms. Neuman moved to recuse the trial judge. She submitted that the judge's husband, the majority leader of the state senate, "ha[d] been a vocal proponent of the view that children should now be attending school in-person . . . and that students and teachers should not be required to wear masks." And "there [wa]s good reason to infer that [the judge] probably . . . share[d] [her husband's] view." Ms. Neuman characterized the litigation with her former husband as over "in-person versus online school attendance for the parties' minor child." So recusal was warranted because of "the possibility of [the judge] being influenced, consciously or otherwise, by [her husband's] views[] and/or her own . . . views."

To support her contentions, Ms. Neuman submitted a guest editorial that the judge's husband had written for *The Tennessean* the previous month. In the editorial, the husband advocated for a return to the classroom and took issue with the local school board's decision to require students, staff, and visitors at elementary schools to wear face masks while indoors and on buses. As for the proposition that the judge's views might align with her husband's, Ms. Neuman cited the husband's political website, which showed the judge and her husband pictured together. The website included a statement that the husband and

the judge had met at a Young Republican function and that they shared the same conservative values. She also cited a social media post from the husband recalling that he and his spouse had protested against a state income tax. Finally, Ms. Neuman stated that the judge "ha[d] (understandably) attended and stood by her husband's side at political events and rallies."

The trial court denied the recusal motion. The order noted that Ms. Neuman offered no evidence that the judge had expressed any opinion on in-person versus online learning or mask requirements for school children. The inference that the judge might share the publicly expressed opinions of her husband was based on speculation and "unfounded beliefs." The court reasoned that the opinions of the judge's husband had nothing to do with the judge's ability to be fair and impartial. And it concluded that personal and political opinions had "no place in the courtroom." The court also found that the recusal motion was "without merit and was filed for an improper purpose and in bad faith."

## II.

Rule 10B of the Rules of the Supreme Court of Tennessee governs the procedure for "determin[ing] whether a judge should preside over a case." TENN. SUP. CT. R. 10B. In an accelerated interlocutory appeal, our review is limited to the trial court's ruling on the motion for disqualification or recusal. *See id.* § 2.01; *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012) ("[T]he only order we may review is the trial court's order that denies a motion to recuse."). We apply a de novo standard of review. TENN. SUP. CT. R. 10B § 2.01.

In an accelerated appeal, we may request an answer from the other party and briefing. *Id.* § 2.05. We may also set oral argument. *See id.* § 2.06. And we may grant a stay of the proceedings below "pending [our] determination of the appeal." *Id.* § 2.04. After a review of the petition for recusal appeal and supporting documents, we determined that an answer from Mr. Phillips was necessary and issued a stay in order to consider the answer.

In Tennessee, litigants "have a fundamental right to a 'fair trial before an impartial tribunal.'" *Holsclaw v. Ivy Hall Nursing Home, Inc.*, 530 S.W.3d 65, 69 (Tenn. 2017) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)); *see Kinard v. Kinard*, 986 S.W.2d 220, 227 (Tenn. Ct. App. 1998) (reasoning that litigants "are entitled to the 'cold neutrality of an impartial court'" (quoting *Leighton v. Henderson*, 414 S.W.2d 419, 421 (Tenn. 1967))); *see also* TENN. CONST. art. VI, § 11. It "goes without saying that a trial before a biased or prejudiced fact finder is a denial of due process." *Wilson v. Wilson*, 987 S.W.2d 555, 562 (Tenn. Ct. App. 1998).

Our courts also recognize that "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565

(Tenn. 2001); *see In re Cameron*, 151 S.W. 64, 76 (Tenn. 1912) ("[I]t is of immense importance, not only that justice shall be administered . . . , but that [the public] shall have no sound reason for supposing that it is not administered."). So a judge should recuse when they have "any doubt as to [their] ability to preside impartially in [a] case." *Davis*, 38 S.W.3d at 564. But a judge must also "disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." TENN. SUP. CT. R. 10, Rule 2.11(A). This test is "an objective one." *State v. Cannon*, 254 S.W.3d 287, 307 (Tenn. 2008). It requires recusal "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Davis*, 38 S.W.3d at 564-65 (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)).

A.

Here, Ms. Neuman first argues that, "by deciding [her recusal] motion without a hearing, [the trial judge] improperly deprived her of the rightful opportunity to make a complete record that could later be made available for appellate review." But we are aware of no right to an evidentiary hearing on a motion to recuse. In most cases, conducting such a hearing would run counter to our supreme court's directive that, when presented with a recusal motion, a trial judge must "act promptly by written order and either grant or deny the motion." TENN. SUP. CT. R. 10B § 1.03. And Ms. Neuman does not explain how she was prejudiced by the lack of an evidentiary hearing. She all but acknowledges a lack of prejudice by arguing that, "even on just the existing record, there is ample reason for this Court to reverse."

Under the circumstances, we discern no error in the trial court ruling summarily and without a hearing on the recusal motion. An evidentiary hearing would not have added anything to Ms. Neuman's two core factual assertions. First, the judge's husband is a prominent elected official who had publicly endorsed in-person over online school attendance and criticized the local school board for requiring masks despite the COVID-19 pandemic. Second, the judge is "well-known to be generally supportive of her husband's views[] and to be of the same political and ideological persuasion."

B.

Based on the factual assertions, Ms. Neuman makes a twofold argument for recusal. First, she "contend[s] that there is a reasonable basis to believe that the judge may very well share [her husband's] opinion, and that this could influence her decisions in this case." Second, she "contend[s] that, even if [the trial judge] does not share that opinion, or does not have a definitive view on the subject of in-person versus online school attendance, [her husband's] highly visible public profile and stated views could influence her consideration of this case." But a judge "is not disqualified merely because he or she is related to one who has an interest in some abstract legal question that is involved in the case." 46 AM.

4

JUR. 2D *Judges* § 118, Westlaw (database updated Nov. 2021). Even if the judge shared her husband's opinion—which Ms. Neuman did not prove—personal bias "does not refer to any views that a judge may have regarding the subject matter at issue." *Alley*, 882 S.W.2d at 821; *see also* 46 AM. JUR. 2D *Judges* § 136 ("Prejudice growing out of . . . political . . . relations generally is insufficient to disqualify a judge."); 48A C.J.S. *Judges* § 273, Westlaw (database updated Nov. 2021) ("A judge will not be disqualified . . . merely by expressing an opinion on a question of law involved in a case in the court.").

This is not the first case in which a trial judge's impartiality has been called into question by virtue of a spouse. *See, e.g.*, *Perry v. Schwarzenegger*, 630 F.3d 909, 911 (9th Cir. 2011) (recusal sought based on "wife's beliefs, as expressed in her public statements and actions, both individually and in her capacity as Executive Director of the American Civil Liberties Union of Southern California"); *Hayes v. Oregon*, No. 1:20-CV-01332-CL, 2021 WL 374967, at *4 (D. Or. Feb. 3, 2021) (recusal sought on the basis of the judge's late husband who served as chair of the Democratic Party of Oregon); *Salazar v. United States*, No. 17-CV-3645 (GBD) (OTW), 2018 WL 2276163, at *1 (S.D.N.Y. May 16, 2018) (recusal sought by virtue of the judge's status as wife of a doctor); *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 257 F. Supp. 3d 1084, 1089 (N.D. Cal. 2017) (recusal sought on the basis of social media activity of the judge's wife); *Akins v. Knight*, No. 2:15-CV-4096-NKL, 2016 WL 127594, at *3 (W.D. Mo. Jan. 11, 2016) (recusal sought based on criticism offered by the judge's spouse to a petition seeking United States Supreme Court review of a case); *Glair v. City of Los Angeles*, No. CV 13-8946 GAF, 2014 WL 12923962, at *1 (C.D. Cal. Apr. 30, 2014) (recusal sought on the speculative notion "that a judge's marriage to a prosecutor makes it impossible for the judge to impartially apply qualified immunity principles to allegations about police officers' actions"). But the idea that a judge should recuse based on a spouse's opinion "is based upon an outmoded conception of the relationship between spouses." *Perry*, 630 F.3d at 912. In marrying, "spouses do not give up their freedom of thought and expression." *Nat'l Abortion Fed'n*, 257 F. Supp. 3d at 1090. So "[n]o thoughtful or well-informed person would simply assume that one spouse's views should always be ascribed or attributed to the other in the absence of an express disclaimer." *Id.*

We agree with the trial judge that the views of her spouse were irrelevant to the proceedings between Ms. Neuman and Mr. Phillips. *See Perry*, 630 F.3d at 911 (recognizing that the views of a judge's spouse "public or private, as to any issues that may come before [a] court, constitutional or otherwise, are of no consequence"); *see also* TENN. SUP. CT. R. 10, Rule 2.4(B) (requiring judges to decide cases without regard to "family, social, political, financial, or other interests or relationships"). The issue before the court is not the merits of in-person or online schooling or whether masks should be required in schools. As Mr. Phillips points out, the issues are whether the current parenting plan should be modified and whether Ms. Neuman should be held in contempt. As part of resolving the latter issue, the court will determine who had authority over educational decisions for the child. As part of resolving the former, the court may decide to modify that authority.

A person of ordinary prudence would not find a reasonable basis for questioning the judge's impartiality based on the facts presented. *See Akins*, 2016 WL 127594, at *3 (determining that "[t]he average person on the street would not reasonably believe the [judge] would approach a case in a partial manner due to [her spouse's] independent views regarding a subject, whether those views are publicly expressed or not").

## C.

As an additional basis for recusal, not found in her recusal motion, Ms. Neuman argues that the court's order denying her request for recusal "reflected a bias on [the judge's] part in favor of [Mr. Phillips]." Ms. Neuman cites two examples from the court's order that she claims "reflects the judge's obvious animosity and antipathy toward [her] and portends the likelihood of a bias against her going forward that makes recusal all the more necessary."

The first example cited is the order's discussion of Mr. Phillips's pending motion for civil contempt. The order describes Mr. Phillips's argument for holding Ms. Neuman in contempt but does not describe Ms. Neuman's response. By doing so, Ms. Neuman claims that the judge "appears to have pre-judged the issue by stating that the [prior divorce decree] gives [Mr. Phillips] final decision-making authority [on educational decisions]." And by addressing the contempt motion at all, the judge "appears to imply" that Ms. Neuman's recusal motion "was somehow nefarious and motivated by a desire to avoid the contempt issue."

We disagree with Ms. Neuman's characterization of the court's order to the extent it addresses the contempt motion. The order denying recusal only briefly describes Mr. Phillips's argument for contempt sanctions in the introductory paragraph. And the order attributes the argument from the contempt motion to Mr. Phillips without further commentary. Referencing the contempt motion provides context on the timing of the recusal motion, but that reference alone suggests nothing about the motivation behind the recusal motion, which brings us to Ms. Neuman's second example.

The second example cited is the order's finding that the recusal motion was filed for an improper purpose and in bad faith. A recusal motion filed "to harass or to cause unnecessary delay or needless increase in the cost of litigation" would be filed with an improper purpose. TENN. SUP. CT. R. 10B, § 1.01. Nothing in this record suggests that Ms. Neuman filed her recusal motion to harass, cause delay, or to increase costs. She only filed the motion after discussing the issue with the judge and opposing counsel on a conference call.

And the court provided little or no explanation for its improper purpose and bad faith finding. The court faulted Ms. Neuman for not carrying her burden of proof to successfully challenge a judge's impartiality. Specifically, the court ruled that she "failed

to identify any factual basis to support her suspicions and unfounded beliefs." But the failure to meet an evidentiary burden does not establish an improper purpose or bad faith. Nor does reliance on "an outmoded conception of the relationship between spouses." *See Perry*, 630 F.3d at 912.

Remarks, unsupported by the record, that "suggest that the judge has taken a position favorable or unfavorable to a party . . . indicate bias." *Alley*, 882 S.W.2d at 822. Likewise, gratuitous comments in a court's order denying recusal that impute unprofessional and unfounded motives to a litigant can be grounds for recusal. *See Commonwealth v. McCauley*, 199 A.3d 947, 952-53 (Pa. Super. Ct. 2018); *cf. Markowitz & Co. v. Toledo Metro. Hous. Auth.*, 608 F.2d 699, 708 (6th Cir. 1979) ("We find no comments . . . which were unwarranted or unsupported by the record, and see no indication of any bias or prejudice in [the judge's] findings of fact or conclusions of law."); *Mallett v. Mallett*, 473 S.E.2d 804, 808 (S.C. Ct. App. 1996) ("It is . . . not . . . clear to us that the trial judge's remarks . . . meet the bias test for recusal, nor are the trial judge's findings so unsupported by the record as to manifest impartiality.").

Although attributing bad faith or improper motive to Ms. Neuman was unjustified, we conclude that that the erroneous finding does not support recusal of the judge. Ms. Neuman does not point to any other instances from the record that might serve as a basis to question the judge's impartiality. *See Cook v. State*, 606 S.W.3d 247, 257 (Tenn. 2020) (holding that a judge's inappropriate comments at the conclusion of a hearing permit a reviewing court to "consider the entire record of the proceeding when evaluating whether those comments are a basis to conclude that the judge's impartiality might reasonably be questioned"). While it was imprudent, the finding alone does not raise a reasonable question as to the judge's impartiality.

## III.

We affirm the denial of Ms. Neuman's motion to recuse. And the stay of the proceedings below is lifted. We remand the case for such further proceedings as may be necessary.

s/ W. Neal McBrayer
W. NEAL MᴄBRAYER, JUDGE

7