IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MITCHELL V. MITCHELL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JAMES L. MITCHELL, APPELLEE,

V.

DEBRA J. MITCHELL, APPELLANT.

Filed March 20, 2018.    No. A-17-295.

Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed as modified.

Debra J. Mitchell, pro se.

Andrew M. Ferguson, of Carlson & Burnett, L.L.P., for appellee.

MOORE, Chief Judge, and PIRTLE and RIEDMANN, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Debra J. Mitchell appeals from a decree of dissolution entered by the district court for Sarpy County that dissolved her marriage to James L. Mitchell, divided their property and debts, and awarded her alimony. On appeal, Debra assigns error to various pre-trial motions; certain conduct by the trial court in relation to her status as a self-represented litigant; and the court's order concerning property division, income tax filings, alimony, and attorney fees. We find the district court erred in directing the parties to file a joint income tax return in 2016, and we modify the decree to eliminate this provision. Finding no other abuse of discretion, we affirm the remainder of the district court's decree.

- 1 -

## II. BACKGROUND

Debra and James were married in October of 1987. They have one adult child. James filed a complaint on August 10, 2015, asking the court to dissolve his marriage with Debra, equitably divide their property and debts, order nonmarital assets be retained by their respective owner, and for other relief as the court may deem just and equitable. On August 27, Debra, through her first attorney, filed an answer and counter complaint for dissolution of marriage, asking the court to award her temporary alimony and restrain the parties from incurring additional debt or selling marital property. The next day, the court entered a stipulated temporary mutual restraining order, prohibiting the sale of property or incurring additional debt. The record does not contain any order with regard to Debra's request for temporary alimony. On December 15, Debra's first attorney filed a motion to withdraw as her counsel, which the court granted.

On April 22, 2016, the court entered an order requiring the parties to either file a "notice of prove-up" or a certificate of readiness within 30 days, in order to avoid dismissal for want of prosecution. James filed a certificate of readiness on April 25, alleging the dissolution action was ready for trial and that a pre-trial conference was unnecessary. On June 3, Debra served her first set of requests for production of documents and interrogatories on James. James objected to the interrogatories, claiming that they were overly broad and unduly burdensome and that they asked for both work product and information protected by the attorney-client privilege.

The matter came on for trial on July 7, 2016. James was represented by counsel and Debra appeared pro se. Debra orally moved for a continuance, arguing she had been unable to complete discovery due to James' noncompliance. Debra acknowledged receiving James' certificate of readiness but indicated that she did not know what it meant. She explained that she broke her hip in January and was unable to work on her case or find a new attorney for several months thereafter. The court granted Debra's motion to continue, and set trial for September 21. James filed a notice of serving discovery documents on August 31, showing that he responded to Debra's interrogatories and requests for production of documents.

On September 12, 2016, a second attorney filed an entry of appearance for Debra, together with a motion to continue trial and a motion to compel and for sanctions. On September 14, James filed an objection to Debra's motion to continue and a response to her motion to compel, which contained several supplemental responses to Debra's discovery requests. On September 20, the court granted Debra's motion to continue, rescheduling the trial for October 6. The court denied her motions to compel and for sanctions. On October 3, Debra's second attorney filed another motion to continue due to counsel's scheduling conflict. The record does not contain a ruling on that motion, but trial did not occur on October 6.

On November 23, 2016, Debra's second attorney filed a motion to withdraw as counsel. On November 28, Debra filed a praecipe for subpoenas, directing six witnesses to attend the dissolution trial, which at that point was scheduled for November 30. The same day, the court held a hearing on counsel's motion to withdraw. At the hearing, Debra again asked the court to reschedule the trial to give her time to prepare to represent herself. Debra's second attorney told the court that Debra's case was prepared and that Debra had all the required work product in her possession. The court granted counsel's motion to withdraw but overruled Debra's motion to continue the trial.

The dissolution trial was held on November 30 and December 7, 2016. James was represented by counsel and Debra represented herself. James testified first regarding his work history. For the past 10 years, he has worked as a program manager for Harris Corporation. Prior to that he was a weather officer in the U.S. Air Force for over 21 years. James and his family moved around the country and to Germany during his tenure with the Air Force. In 2015, James received a salary of $133,000 from his employment at Harris Corporation. Additionally, he received a total of $47,000 as a military pension. At the time of trial, his income remained the same as in 2015. James pays each month for a survivor benefit plan that would allow Debra to receive half of his military pension after he dies. He asked the court to divide his pension evenly between him and Debra, but he also requested the court require Debra to pay the survivor benefit plan premium. James receives disability from the military, which he asked the court to award him separately.

Although James moved out of the marital house in September of 2015, Debra continues to live there. The parties also own a rental house. During the pendency of the divorce, James has paid (or given Debra funds to pay) the monthly mortgage on the marital house, homeowners' association fees, car payments, Debra's cell phone service, and other expenses, totaling approximately $3,600 each month. James reduced his contribution to these expenses in the 2 months preceding trial.

James requested that the court not grant alimony to Debra. He explained that Debra is a licensed esthetician and real estate agent. James testified that Debra worked "quite a bit" at the beginning of the marriage but then "not a lot in later years." According to James, Debra stated she worked in 2013, 2014, and 2015, but he did not know whether she had any sales in those years. The 2014 federal income tax return shows no business income and the 2015 return shows business income of $155 although there is no Schedule C attached. James agreed that Debra's income as a realtor has fluctuated "dramatically" and that the only time she was successful as a realtor was when she worked selling newly constructed homes. James was aware that Debra did not work in 2016 due to an accident in January. He also noted that she had an accident in 2014. James testified and submitted exhibits about the assets and debts accumulated during the marriage, together with their values and amounts. He also proposed a division of the assets and debts to the court. James admitted to accumulating significant credit card debt during the marriage, which at the time of trial amounted to $86,246.80. Other than a trip to Europe with his father and brother, which he admitted using one of the cards to finance, he testified that all of the purchases he made using credit card debt were for marital purposes. He asked the court to award all of the debts to him. On cross examination, Debra questioned James regarding various purchases James made with his credit cards.

Debra testified that she is self-employed as a real estate agent. Although she lost her real estate certifications during the past several months, she admitted that the certifications are not necessary to be a licensed real estate agent. She broke her leg on January 5, 2016, which keeps her from walking long distances. She was not certain if she would make a full recovery. Debra did not apply for disability because she did not believe she would qualify. She was also injured in a car accident in February of 2014 for which she was not at fault. Debra testified that she has not sued anyone for compensation for lost work from her injury because she is "still broken." She described how physically taxing selling new houses is and opined that she would not be able to do this work

due to her injuries. However, she admitted to taking a role in a musical after at least one of her injuries and that she was able to "power through" practices and rehearsals despite her condition.

Debra requested the court order the parties to sell the rental property and split the profits because she does not have the money to upkeep the property. She observed that the monthly mortgage payment on the rental property is currently $200 higher than the property's monthly rental income. Debra testified that she believed the court should consider James' credit card debt as nonmarital. But she admitted that James may have made purchases for the family on each of the credit cards. She also requested the court grant her $8,550 in attorney fees from three attorneys, one of whom was never her attorney of record in this matter. She further asked the court to order James to pay $2,700 each month in alimony.

Debra called other witnesses to testify about James' spending habits. Although the witnesses confirmed that James made extravagant purchases, the witnesses also indicated that Debra used and enjoyed at least some of those purchases. Debra also called the parties' daughter. She testified that although her mother was her primary caregiver as a child, her mother worked long hours when she was growing up.

Debra offered several exhibits into evidence, including invoices from her attorneys, messages between her and James, her husband's credit report, a copy of James' response to Debra's request for production of documents and interrogatories, credit card and bank statements that James provided in discovery, her personal budget, and a list of assets and debts that Debra requested not be included in the marital estate. Debra also played for the court several recorded conversations between James and her about how they would divide assets upon their divorce and how James' father planned to give James money.

After Debra finished offering exhibits, Debra and the court had the following exchange:

THE COURT: Do you have any further evidence, Ms. Mitchell?
DEBRA: I don't think you want me to do it, so no.
THE COURT: I'm not trying to limit what you're doing.
DEBRA: I turned over 20 hours of recordings to him.
THE COURT: Any further evidence then?
DEBRA: No.
THE COURT: Is that a no, ma'am?
DEBRA: No, sir.

At the conclusion of evidence, the court asked whether the parties wished to submit written closing arguments or deliver an oral closing. Debra indicated her preference to deliver an oral closing and the court heard closing arguments on December 7, 2016. Before her closing, Debra remarked that she was confused because she thought she would be able to present testimony at closing arguments. The court noted that it had asked her whether she had more evidence before scheduling closing arguments and that she replied she did not. During her closing, Debra argued that she is entitled to substantial alimony because she raised their daughter alone while working full time, explaining she was able to pay off $95,000 in credit card debt through her income in 2005.

The court issued its decree on January 5, 2017. The court divided the marital estate, and in particular, awarded Debra the marital house and rental house, subject to the mortgages. The court assigned all of the unsecured debt to James. James received a net award of $113,676.01 while

Debra received a net award of $121,395.03. The court awarded Debra one-half of James' "military disability for retirement payment" provided she pay the survivor benefit cost associated with the payment. The court determined that the current after-tax benefit less the survivor benefit cost is $1,686.04 each month. The court awarded Debra $500 each month for 12 months in alimony. The court ordered the parties to file a joint federal and state tax return for 2016 with any refund to be divided equally but any liability to be paid by James. Finally, the court ordered each party to pay his or her own attorney fees and costs.

On January 13, 2017, James filed a motion to alter or amend the decree. Among other requests, he asked the court to clarify that he receives both a military pension benefit and a military disability benefit and to amend the decree to reflect that Debra is receiving one half of his military pension benefit but not his military disability benefit. James also alleged that he will be responsible for the survivor benefit plan benefit due to military pension benefit regulations and asked that Debra be awarded 43.5 percent instead of 50 percent to offset this cost. On February 16, the court entered an order in which it granted James' request regarding the military disability benefit but denied his request to change the percentage allocation of the pension benefit. The court also ordered the alimony payments to be made through the clerk of the court. The court denied all of James' other requests to amend the decree.

Debra appealed.

### III. ASSIGNMENTS OF ERROR

Debra assigns, consolidated and restated, that the district court erred (1) in granting her second attorney's motion to withdraw and overruling her motions for a continuance and to compel production of documents; (2) in not allowing her to testify and in using legal terminology that most pro se litigants would not understand; and (3) in its division of the marital estate, in ordering the parties to file a joint state and federal tax return for 2016, the amount and duration of alimony awarded, and in failing to award her attorney fees.

As addressed by James in his brief on appeal, Debra has not specifically argued each of the errors she assigns as required by Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2014). While Debra specifically assigned errors that she also used as headings in the argument section of her brief, the argument section only contains quotations from appellate decisions. Debra does not set forth any argument as to how she believes the district court abused its discretion in connection with the various assigned errors.

To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Mock v. Neumeister*, 296 Neb. 376, 892 N.W.2d 569 (2017). An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it. *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016). Where a party's brief fails to comply with the mandate of § 2-109(D)(1)(e), we may proceed as though the party failed to file a brief or may examine the proceedings for plain error. *In re Interest of Samantha L. & Jasmine L.*, 286 Neb. 778, 839 N.W.2d 265 (2013). Because Debra has failed to specifically argue the errors she assigned, we examine the record for plain error.

## IV. STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017).

"Plain error" exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Osantowski, supra.*

## V. ANALYSIS

### 1. ACCEPTANCE OF BENEFITS DOCTRINE DOES NOT PRECLUDE APPEAL

As a preliminary matter, James argues we should not reach Debra's appeal based on her acceptance of benefits under the decree. He asserts that Debra has voluntarily accepted monthly alimony payments, monthly payments from his military retirement pension, cashed out certain accounts in compliance with the decree, and collected rent from the rental property awarded her under the decree. Similarly, he contends she continues to live in the marital house awarded to her. He claims that by these actions, she has voluntarily accepted the benefits awarded to her under the decree. For the reasons set forth below, we disagree.

Under the acceptance of benefits rule, an appellant may not voluntarily accept the benefits of part of a judgment in the appellant's favor and afterward prosecute an appeal or error proceeding from the part that is against the appellant. *Liming v. Liming*, 272 Neb. 534, 723 N.W.2d 89 (2006). There are, however, exceptions to this general rule, including where the outcome of the appeal could have no effect on the appellant's right to the benefit accepted. See *id.* (citing 5 Am. Jur. 2d *Appellate Review* § 633 (1995)) (exception to acceptance of benefits rule has been recognized where, on appeal, one may obtain more favorable judgment without risk of less favorable judgment). See, also, *Becher v. Becher*, 24 Neb. App. 726, 897 N.W.2d 866 (2017) (finding acceptance of benefits rule did not bar former husband's appeal of property award even though he took possession of property awarded to him under divorce decree). The possibility that an appeal may show that the appellant was not entitled to what he or she received under the appealed judgment defeats the appellant's right of appeal. *Liming, supra.* Where there is no such possibility, the acceptance of benefits under the appealed judgment does not forbid appeal. *Id.*

As a general rule, a spouse who accepts payments under the alimony or property settlement provisions of a divorce judgment does not waive the right to appellate review where the spouse's right to the benefits accepted is conceded by the other spouse, the spouse was entitled as a matter of right to alimony or a share of the marital estate such that the outcome of the appeal could have no effect on the right to the payment accepted, or the payment accepted is under a separable award which will not be subject to further review. *Id.*

> The reasoning for these exceptions is that to preclude appeal by the acceptance of the benefits of a divorce judgment, the acceptance of benefits must be of such a nature as to clearly indicate an intention to be bound by the divorce decree. [Citations omitted.] There must be unusual circumstances, demonstrating prejudice to the appellee, or a very

clear intent to accept the judgment and waive the right to appeal, to keep an appellate court from reaching the merits of the appeal.

*Id*., 272 Neb. at 534, 723 N.W.2d at 96-97.

We find no such unusual circumstances here. Debra did not clearly indicate an intention to accept the judgment and waive her right to appeal, nor does James demonstrate any prejudice to him. Debra's appeal essentially asks this court to increase the amount and duration of her alimony and reclassify certain debts as nonmarital, which arguably would require an award of more property to her in order to equalize the division of the marital estate. Should Debra be successful on appeal, she would receive a more favorable judgment without the risk of a less favorable judgment. Further, by failing to cross-appeal the district court's property division and alimony award, James conceded that Debra, at minimum, is entitled to the district court's property and alimony award.

We conclude the acceptance of benefits doctrine does not preclude Debra's appeal.

2. PRETRIAL MOTIONS

(a) Motion to Withdraw and Motion to Continue

The court did not commit plain error in allowing Debra's second attorney to withdraw and denying Debra's motion to continue. A motion for continuance is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. *Breci v. St. Paul Mercury Ins. Co.*, 288 Neb. 626, 849 N.W.2d 523 (2014). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Lewison v. Renner*, 298 Neb. 654, 905 N.W.2d 540 (2018). When reviewing a motion to continue, an appellate court should look to the following three factors: (1) the number of continuances granted to the moving party, (2) the importance of the issue presented in the matter, and (3) whether the continuance being sought was for a frivolous reason or a dilatory motive. *Velehradsky v. Velehradsky*, 13 Neb. App. 27, 688 N.W.2d 626 (2004).

In the course of this litigation, Debra was granted three continuances. The court granted the first request to allow Debra additional discovery and an opportunity to find an attorney. Thereafter, the court granted two additional continuances to allow the attorney time to prepare the case and to avoid the attorney's scheduling conflicts. Debra's second attorney fully prepared Debra's case for trial and gave her access to the prepared materials. Because Debra and James had no minor children, the only issues involved in the action were the equitable division of marital assets and debts and the determination of alimony. By the time of her fourth request for a continuance on November 28, 2016, the dissolution action had been pending for over a year. In our review of the record, the court did not commit plain error when it refused to grant Debra's fourth request for a continuance. Similarly, the court did not commit plain error by allowing the second attorney to withdraw after she fully prepared Debra's case and gave her access to her files for trial.

### (b) Motion to Compel Production of Documents

The trial court did not commit plain error by overruling Debra's September 12, 2016, motion to compel. Decisions regarding discovery are left to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion. *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017). James supplemented his interrogatory answers in his September 14 response to Debra's motion to compel. We find no abuse of discretion by the trial court in overruling Debra's motion to compel.

### 3. DENIAL OF TESTIMONY AND USE OF LEGAL TERMINOLOGY

The court did not commit plain error by denying Debra an opportunity to testify at trial or by using legal terminology that Debra was unable to understand. From our review of the record, Debra did in fact testify at trial and was not restricted from offering evidence at any time. The district court was quite accommodating to Debra during her trial, explaining how the trial would proceed and when to offer certain pieces of evidence. We find no instance in the record to show that the district court's conduct at trial or use of legal terminology unfairly prejudiced Debra in the presentation of her case. At any rate, a self-represented litigant is held to the same standards as one who is represented by counsel. *Cattle Nat. Bank & Trust Co. v. Watson*, 293 Neb. 943, 880 N.W.2d 906 (2016). We find no plain error in the court's conduct of the trial.

### 4. DISTRICT COURT ORDER

### (a) Property Classification and Division

The court did not commit plain error in its classification and division of the marital property. Under Nebraska's divorce statutes, "[t]he purpose of a property division is to distribute the marital assets equitably between the parties." Neb. Rev. Stat. § 42-365 (Reissue 2016). The ultimate test in determining the appropriateness of the division of property in a marital dissolution action is fairness and reasonableness as determined by the facts of each case. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017). Equitable division of property is a three-step process: (1) classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage; (2) value the marital assets and marital liabilities of the parties; and (3) calculate and divide the net marital estate between the parties in accordance with the principles contained in equitable distribution statute. *Id.*

All property accumulated and acquired by either spouse during the marriage, including marital debts, is part of the marital estate. *Bergmeier v. Bergmeier*, 296 Neb. 440, 894 N.W.2d 266 (2017). A marital debt is one incurred during the marriage and before the date of separation by either spouse or both spouses for the joint benefit of the parties. *McGuire v. McGuire*, 11 Neb. App. 433, 652 N.W.2d 293 (2002). The burden of proof to show that property is nonmarital rests with the person making the claim. *Bergmeier, supra*.

It appears that Debra's primary complaint about the court's division is its classification of the credit card indebtedness as marital. From our review of the record, Debra failed to produce evidence that the over $86,000 in credit card debt was nonmarital. Although the record supports that James did the vast majority of the spending during the marriage, there was no evidence of large transactions that were solely intended for James' nonmarital benefit. The record shows that

Debra benefited from many of the purchases. We cannot conclude the district court committed plain error by classifying the credit card debt as marital and dividing the marital property accordingly.

### (b) Joint State and Federal Tax Return

We find the district court committed plain error by requiring Debra and James to file a joint 2016 tax return. The Nebraska Supreme Court held in *Brock v. Dalbey*, 283 Neb. 994, 815 N.W.2d 530 (2012), that a trial court does not have discretion to compel parties seeking marital dissolution to file a joint income tax return. We modify the district court's decree to eliminate this provision.

### (c) Amount and Duration of Alimony

We find no plain error in the amount and duration of the court's alimony award. In considering alimony, a court should weigh four factors listed in Neb. Rev. Stat. § 42-365 (Reissue 2016): (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the party seeking support to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. *Becher v. Becher*, 24 Neb. App. 726, 897 N.W.2d 866 (2017). In addition to the specific criteria listed in § 42-365, a court should consider the income and earning capacity of each party and the general equities before deciding whether to award alimony. *Becher, supra*.

The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in § 42-365 make it appropriate. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016). In weighing a request for alimony, the court may take into account all of the property owned by the parties when entering the decree, whether accumulated by their joint efforts or acquired by inheritance. *Id*.

The district court discussed Debra's request for alimony at length in its decree. The court addressed Debra's basis for the request, including the disparity in the parties' income, her inability to work due to her injury, her status as the primary caretaker of the parties' child, and her foregoing career advancement for the benefit of James. The court stated that it "had the opportunity to observe [Debra] and there are significant issues regarding her credibility." The court noted that it is apparent that Debra does suffer from injury, but that she "selectively brings the issue into testimony when it benefits her." The court stated at times she operated in the courtroom without noticeable injury, but at other times "it was apparent that she was feigning injury and tears." With regard to Debra's contention that she was the primary caretaker for her daughter, the court noted the contradictory evidence that shows Debra was employed while raising the daughter. The court also found no evidence to show that Debra had foregone employment to care for the child and no evidence that James prevented her from pursuing a more lucrative career.

Reviewing the statutory factors to be considered, the court found that this was a long marriage of over 25 years and that both parties were employed and financially contributed to the marriage and the child. The court found that Debra is in need of funds for the temporary transition and James has the ability to pay. However, the court found that this was "countered by [Debra's] failure to make efforts to become employed [or] seek any disability compensation or pursue any injury claim." The court noted James' payment of the mortgages, car payments, credit cards, and

the daughter's student loan since the dissolution was filed. The court noted that moving forward, the property distribution grants significant equity to Debra and income from James' military benefits and that while James also receives significant property, he is subject to a high debt service. Based upon the equitable principles in awarding alimony, the court found it reasonable to award Debra alimony of $500 per month for 1 year.

Our de novo review of the record supports the district court's findings. An appellate court will consider the fact that the trial court saw and heard the witnesses and observed their demeanor while testifying, and will give great weight to the trial court's judgment as to credibility. *In re Interest of J.R.*, 277 Neb. 362, 762 N.W.2d 305 (2009); *Coffey v. Coffey*, 11 Neb. App. 788, 661 N.W.2d 327 (2003). We find no plain error in the district court's determination of alimony.

### (d) Attorney Fees

We find the court did not commit plain error by failing to award attorney fees. In an action for dissolution of marriage, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Lisec v. Lisec*, 24 Neb. App. 572, 894 N.W.2d 350 (2017). The award of attorney fees depends on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and the general equities of the case. *Id.*

As a matter of law, Debra is not entitled to attorney fees for her self-representation. *Thomas v. Thomas Court Reporters v. Switzer*, 283 Neb. 19, 810 N.W.2d 677 (2012). Debra did present evidence that she paid $8,550 to 3 attorneys during the course of this litigation, one of whom was never an attorney of record in this matter. Under the circumstances of this case, we find no abuse of discretion by the district court in ordering each party to pay his or her own attorney fees.

### VI. CONCLUSION

We find no abuse of discretion or plain error in the district court's pretrial rulings, trial conduct, division of the marital estate, award of alimony, or determination of attorney fees. However, the district court did abuse its discretion in ordering the parties to file a joint income tax return, and we modify the decree to eliminate this provision. In all other respects, we affirm the order of the district court.

AFFIRMED AS MODIFIED.